# NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC

## MASTER LEASE AGREEMENT

dated as of April 18, 2008 by and between

| | | |
|---|---|---|
| **Lessor:** National City Commercial Capital Company, LLC<br>995 Dalton Avenue<br>Cincinnati, OH 45203<br>Contact: Contract Administration<br>Phone: (513) 421-9191 | and | **Lessee:** My Ranch, Inc.<br>4650 N. Sheridan Road<br>Chicago, IL 60640<br>Contact: Cecelia Johnson<br>Phone: (773) 516-4860 |

1. LEASE. Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor the personal property including intangibles (the "Equipment") described in one or more rental schedules ("Rental Schedules") to this Master Lease Agreement (the "Master Lease Agreement"). Each such Rental Schedule incorporates by this reference, the terms and conditions set forth in this Master Lease Agreement and constitutes a separate lease (the "Lease"). The lease of Equipment under each Lease shall be for such term and such rents as may be agreed to by execution of the Rental Schedules, and this Master Lease Agreement shall control and be effective as to all such Rental Schedules, the same as though set forth therein unless expressly amended or modified in writing for particular Rental Schedules. The term "Equipment" as used in this Master Lease Agreement shall refer to items leased under all Rental Schedules and the terms hereof, unless expressly amended or modified in writing, shall apply equally to all such Equipment.

2. TERM AND RENT. The initial term ("Initial Term") for each item of Equipment shall be for the period specified in the applicable Rental Schedule, and Lessee shall pay Lessor, throughout the Initial Term for the use of the Equipment, the Rent specified in the applicable Rental Schedule. The Initial Term and Rent with respect to each item of Equipment shall commence as set out in the applicable Rental Schedule. For purposes of this Lease, the term "Rent" as used herein shall mean and include all amounts payable by Lessee to Lessor hereunder.

3. LATE CHARGES. Time is of the essence in this Lease. If any Rent or other amount due hereunder is not paid within ten days after the due date thereof, Lessor shall have the right to add and collect and Lessee agrees to pay a late charge on, and in addition to, such unpaid Rent for each month or part thereof that such Rent remains unpaid or other charges, equal to five percent of such unpaid Rent or a lesser amount if established by any state or federal statute applicable thereto.

4. DISCLAIMER OF WARRANTIES. Lessee acknowledges that Lessor is not the manufacturer of the Equipment, nor manufacturer's agent, and Lessee represents that Lessee has selected the Equipment leased hereunder based upon Lessee's judgment prior to having requested Lessor to purchase the same for leasing to Lessee, and Lessee agrees that as between Lessor and Lessee, the Equipment leased hereunder is of a design, size, fitness and capacity selected by Lessee and that Lessee is satisfied that the same is suitable and fit for its intended purposes. LESSEE FURTHER AGREES THAT LESSOR HAS MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF WHATSOEVER NATURE, DIRECTLY OR INDIRECTLY, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO SUITABILITY, DURABILITY, FITNESS FOR USE AND MERCHANTABILITY OF ANY SUCH EQUIPMENT, THE PURPOSES AND USES OF THE LESSEE THE CHARACTERIZATION OF THE LEASE FOR TAX, ACCOUNTING OR OTHER PURPOSES, COMPLIANCE OF THE EQUIPMENT WITH APPLICABLE GOVERNMENTAL REQUIREMENTS, OR OTHERWISE. Lessee specifically waives all rights to make claim against Lessor herein for breach of any warranty of any kind whatsoever. Notwithstanding the foregoing, Lessee shall be entitled to the benefit of any applicable manufacturer's warranties received by Lessor and to the extent assignable, and Lessor hereby assigns such warranties to Lessee for the term of the applicable Rental Schedule. Lessor shall take such actions as may reasonably be necessary to assign such warranties to Lessee. Lessor shall not be liable to Lessee for any loss, damage or expense of any kind or nature caused directly or indirectly by any Equipment leased hereunder or for the use or maintenance thereof, or for the failure of operations thereof, or for the repairs, service or adjustment thereto, or by any delay or failure to provide any thereof, or by any interruption of service or loss of use thereof or for any loss of business or any other damage whatsoever and howsoever caused. No defect or unfitness of the Equipment shall relieve Lessee of the obligation to pay Rent, or to perform any other obligation under this Lease.

5. USE, OPERATION AND MAINTENANCE. Lessee shall use the Equipment in the manner for which it was designed and intended, solely for Lessee's business purposes, in accordance with all manufacturer manuals and instructions and in compliance with all applicable laws, regulations and orders. Lessee, at Lessee's own cost and expense, shall keep the Equipment in good repair, condition and working order, ordinary wear and tear excepted, and shall furnish all parts, mechanisms, devices and servicing required therefore and necessary to comply with all applicable health and safety standards. The Equipment, upon return to Lessor, shall be in such condition as to qualify for a maintenance agreement with

the manufacturer or such other party as may be acceptable to Lessor, if such agreement is customarily available, without additional cost to Lessor, but nothing contained herein shall require the Lessee to modify or upgrade the equipment. All replacement parts and repairs at any time made to or placed upon the Equipment shall become the property of Lessor. Lessee may, with Lessor's prior written consent, which shall not be unreasonably withheld, make such alterations, modifications or additions to the Equipment as Lessee may deem desirable in the conduct of its business; provided the same shall not diminish the value or utility of the Equipment, or cause the loss of any warranty thereon or any certification necessary for the maintenance thereof, and shall be readily removable without causing damage to the Equipment. Upon return to Lessor the Equipment as to which such alterations, modifications or additions have been made, Lessee, if requested to do so by Lessor, shall remove the same and restore the Equipment to its original condition, reasonable wear and tear only being excepted, and, if not so removed, title thereto shall automatically vest in Lessor. Lessor acknowledges that any data files or software developed or installed by Lessee which is resident on the equipment shall be and remain the property of Lessee; provided however that the Lessor shall have no obligation or responsibility to remove or return same to Lessee.

LESSEE SHALL KEEP THE EQUIPMENT FREE AND CLEAR FROM ALL LIENS, CHARGES, ENCUMBRANCES, LEGAL PROCESS AND CLAIMS. LESSEE SHALL NOT ASSIGN, SUBLET, HYPOTHECATE, SELL, TRANSFER OR PART WITH POSSESSION OF THE EQUIPMENT OR ANY INTEREST IN THIS LEASE, AND ANY ATTEMPT TO DO SO SHALL BE NULL AND VOID AND SHALL CONSTITUTE A DEFAULT HEREUNDER. LESSEE SHALL NOT MOVE THE EQUIPMENT FROM THE LOCATION NOTED IN THE RENTAL SCHEDULES WITHOUT THE PRIOR WRITTEN NOTICE TO LESSOR FIVE DAYS IN ADVANCE OF THE MOVE. NEITHER THIS LEASE NOR ANY INTEREST IN THE EQUIPMENT IS ASSIGNABLE OR TRANSFERABLE BY LESSEE BY OPERATION OF LAW. LESSEE AGREES NOT TO WAIVE ITS RIGHT TO USE AND POSSESS THE EQUIPMENT IN FAVOR OF ANY PARTY OTHER THAN LESSOR AND FURTHER AGREES NOT TO ABANDON THE EQUIPMENT TO ANY PARTY OTHER THAN LESSOR. SO LONG AS LESSEE FAITHFULLY PERFORMS AND MEETS EACH AND EVERY MATERIAL TERM AND CONDITION TO BE PERFORMED OR MET BY LESSEE UNDER THIS LEASE, LESSEE'S QUIET AND PEACEFUL POSSESSION OF THE EQUIPMENT WILL NOT BE DISTURBED BY LESSOR OR ANYONE CLAIMING BY, THROUGH OR ON BEHALF OF LESSOR.

6.    TITLE. The Equipment is and at all times shall remain the sole and exclusive personal property of Lessor (subject to Section 17 hereof). No right, title or interest in the Equipment shall pass to Lessee other than the right to maintain possession and use of the Equipment for the full lease term, conditioned upon Lessee's compliance with the terms and conditions of this Lease. If requested by Lessor, Lessee shall affix to or place on the Equipment, at Lessor's expense, plates or markings indicating Lessor's ownership. Lessee covenants and agrees that the Equipment is, and will at all times, remain the personal property of Lessor (subject to Section 17 hereof). If requested by Lessor, Lessee will make reasonable efforts to obtain a waiver on any Equipment that may be deemed a fixture in recordable form, from all persons with a real property interest in the premises wherein the Equipment may be located, waiving any claim with respect thereto. Lessor shall have the right from time to time during normal business hours, with reasonable notice, to enter upon Lessee's premises or elsewhere for the purpose of confirming the existence, condition, and proper maintenance of the Equipment. Lessee agrees that this Master Lease Agreement and any applicable Rental Schedules constitute a true lease. However, if this transaction is deemed to be a Lease intended for security, Lessee grants Lessor a purchase money security interest in the equipment (including any replacements, substitutions, additions, attachments and proceeds).

7.    TAXES. Lessee shall promptly reimburse Lessor for, or shall pay directly if so requested by Lessor, as additional Rent, all taxes, charges and fees which may now or hereafter be imposed or levied by any governmental body or agency upon or in connection with the purchase, ownership, lease, possession, use or location of the Equipment or otherwise in connection with the transactions contemplated by the Lease, excluding, however, all taxes on or measured by the net income of Lessor, and shall keep the Equipment free and clear of all levies, liens or encumbrances arising therefrom. Lessor shall file, as owner and party responsible for payment of tax, personal property tax return relating to the Equipment unless otherwise provided in writing. Lessee shall promptly reimburse Lessor in full for all property taxes levied on or assessed against the Equipment during the Initial Term and all renewals or extensions. Failure of Lessee to promptly pay amounts due hereunder shall be the same as failure to pay any installment of Rent. If Lessee is requested by Lessor to file any returns or remit payments directly to any governmental body or agency as provided for hereunder, Lessee shall provide proof of said filing or payment to Lessor upon request.

8.    LOSS OR DAMAGE OF EQUIPMENT. Lessee hereby assumes and shall bear the risk of loss for destruction of or damage to the Equipment from any and every cause whatsoever, whether or not insured, until the Equipment is returned to Lessor. No such loss or damage shall impair any obligation of Lessee under this Lease, which shall continue in full force and effect. In event of damage to or theft, loss or destruction of the Equipment (or any item thereof), Lessee shall promptly notify Lessor in writing of such fact and of all details with respect thereto, and shall, within thirty (30) days of such event, at Lessor's option, (a) place the same in good repair, condition and working order or, (b) Lessee shall have the option to, at Lessee's expense, substitute Equipment (or any item thereof) of the Identical Manufacture, Make, Model, and Features, unless this option is expressly prohibited in a specific Lease, in good repair, condition and working order and transfer clear title to such replacement property to Lessor whereupon such property shall be subject to this Lease and be deemed the Equipment for purposes hereof; or, (c) pay Lessor an amount equal to the sum of (i) all Rent accrued to the date of such payment, plus (ii) the "Stipulated Loss Value" as set forth in the Rental Schedules, whereupon this Lease shall terminate, except for Lessee's duties under Section 10 hereof, solely with respect to the Equipment (or any item thereof) for which such payment is received by Lessor. Upon payment of the amount set forth in (c), the Rent for such Rental Schedules shall be reduced proportionately. Any insurance proceeds received with respect to the Equipment (or any item thereof) shall be

applied, in the event option (c) is elected, in reduction of the then unpaid obligations, including the Stipulated Loss Value, of Lessee to Lessor, if not already paid by Lessee, or, if already paid by Lessee, to reimburse Lessee for such payment, or, in the event option (a) or (b) is elected, to reimburse Lessee for the costs of repairing, restoring or replacing the Equipment (or any item thereof) upon receipt by Lessor of evidence, satisfactory to Lessor, that such repair, restoration or replacement has been completed, and an invoice therefor.

9. INSURANCE. Lessee shall keep the Equipment insured against theft and all risks of loss or damage from every cause whatsoever for not less than the greater of the replacement cost, new, or the Stipulated Loss Value of the Equipment and shall carry public liability insurance, both personal injury and property damage, and Lessee shall be liable for all deductible portions of all required insurance. All said insurance shall be in form and amount and with companies satisfactory to Lessor. All insurance for theft, loss or damage shall provide that losses, if any, shall be payable to Lessor, and all such liability insurance shall name Lessor (or Lessor's assignee as appropriate) as additional insured and shall be endorsed to state that it shall be primary insurance as to Lessor. Any other insurance obtained by or available to Lessor shall be secondary insurance. Lessee shall pay the premiums therefor and deliver to Lessor a certificate of insurance or other evidence satisfactory to Lessor that such insurance coverage is in effect; provided, however, that Lessor shall be under no duty either to ascertain the existence of or to examine such insurance policies or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Lessor, that it will give Lessor thirty (30) days written notice prior to the effective date of any alteration or cancellation of such policy. The proceeds of such insurance payable as a result of loss of or damage to the Equipment shall be applied as set out in Section 8 hereof. After thirty days from an event of loss or damage as set out in Section 8 hereof, Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any said insurance policies.

If Lessee fails to maintain the required insurance on the Equipment, or provide proof of same to Lessor, Lessor may at its sole discretion, but shall not be obligated to, obtain insurance to protect Lessor's interest in the Equipment. Lessee agrees to pay Lessor for all costs and expenses which Lessor pays or incurs as a result of Lessee's failure to maintain insurance. Without limitation, Lessee specifically agrees that it will pay the monthly insurance charge, as requested by Lessor at the time payment is due. The insurance charge may include, but not be limited to, the insurance premium paid by Lessor; finance charges on the premium (which may be higher than the rate used to determine Lessee's Equipment rental amount); tracking fees; fees for billing and collecting the insurance premium and related charges; administrative fees; and, other fees resulting from the failure to maintain insurance on the Equipment. Lessee acknowledges that Lessor may keep some or all of these insurance charges, including the billing, tracking and other fees; the finance charges; commissions or reinsurance premiums paid to Lessor or an affiliate of Lessor; and, a profit included in any of these charges. Lessee agrees that the premium and insurance charges assessed by Lessor are likely to be higher than the amounts Lessee would pay to maintain insurance on the Equipment as agreed in this Lease. Lessor's election to obtain insurance to protect the Equipment shall not constitute a waiver of Lessee's breach of its insurance obligations, and Lessor reserves all other remedies provided under this Lease or applicable law.

10. LESSEE INDEMNITY. Lessee assumes liability for and shall indemnify, save, hold harmless (and, if requested by Lessor, defend) Lessor, its officers, directors, employees, agents or assignees from and against any and all claims, actions, suits or proceedings of any kind and nature whatsoever, including all damages, liabilities, penalties, costs, expenses and legal fees (hereinafter "Claim(s)") based on, arising out of, connected with or resulting from this Lease of the Equipment, including without limitation the manufacture, selection, purchase, delivery, acceptance, rejection, possession, use or operation of the equipment and claims by third parties resulting from or relating to ownership, return or disposition of the Equipment, and including without limitation Claims arising in contract or tort (including negligence, strict liability or otherwise), arising out of latent defects (regardless of whether the same are discoverable by Lessor or Lessee) or arising out of any trademark, patent or copyright infringement. If any Claim is made against Lessee or Lessor, the party receiving notice of such Claim shall promptly notify the other, but the failure of such person receiving notice so to notify the other shall not relieve Lessee of any obligation hereunder.

11. TAX INDEMNITY. Lessee acknowledges that (1) Lessor intends to claim and take the accelerated cost recovery deductions available in the manner and as provided by section 168 and related sections of the Internal Revenue Code of 1986, as amended, and regulations adopted thereunder (the "Code") as in effect on the date hereof (such deductions being referred to hereinafter as "Tax Benefits") and (2) the Rent payable hereunder has been computed upon the assumption that such Tax Benefits shall be available to Lessor. Lessee represents and warrants to Lessor that all of the Equipment is, at and after the time of delivery of the Equipment to the location set forth in the Rental Schedules, new, unless designated otherwise on the Rental Schedules. Lessee further represents and warrants that it has not, and will not at any time from such delivery through the term of this Lease take any action or omit to take any action (whether or not the same is permitted or required hereunder) which will result in the loss by Lessor of all or any part of the Tax Benefits. If as a result of any act, omission or misrepresentation of Lessee, the Tax Benefits are lost, disallowed, eliminated, reduced, recaptured, compromised or are otherwise unavailable to Lessor (any of the foregoing being a "Loss"), Lessee shall promptly pay to Lessor on demand, as additional Rent, an amount which will, after deduction therefrom of all taxes required to be paid in respect of the receipt thereof, enable Lessor to receive the same rate of return that Lessor would have realized had such Loss not occurred, together with any interest, penalties or additions to tax. Upon payment of such amount by Lessee, such act, omission or

misrepresentation of Lessee which resulted in a Loss shall not be deemed a default hereunder. Any event which by the term of this Lease requires payment by Lessee to Lessor of the Stipulated Loss Value of the Equipment, shall not constitute the act, omission or misrepresentation of Lessee for purposes of the foregoing sentence. Lessor hereby agrees to exercise in good faith its best efforts (determined in the sole discretion of Tax Counsel of Lessor to be reasonable, proper and consistent with the overall tax interest of Lessor) to avoid requiring Lessee to pay the tax indemnity referred to in this Section 11; provided, however, Lessor shall have the sole discretion to determine whether or not to undertake judicial or administrative proceedings beyond the level of an Internal Revenue Service auditing agent; and provided further, that Lessor shall not be required to take any action pursuant to this sentence unless and until Lessee shall have agreed to indemnify Lessor for any and all expenses (including attorney's fees), liabilities or losses which Lessor may incur as a result of taking such action. For purposes of this Section 11, the term "Lessor" shall include the entity or entities, if any, with which Lessor consolidates its tax return.

    12. RETURN OF EQUIPMENT. Lessee shall give Lessor ninety days written notice prior to the expiration of the Initial Term of its intent to return the Equipment. Upon expiration of the Initial Term or other termination pursuant to the terms of this Lease, Lessee shall immediately return all but not less than all of the Equipment and all related accessories to Lessor, or to such place within the continental United States as Lessee may be instructed by Lessor. The Equipment shall, at Lessee's sole expense, be crated and shipped in accordance with the manufacturer's specifications, freight prepaid and properly insured. If the Equipment, upon its return, is not in good repair, condition and working order, ordinary wear and tear excepted, and has not been maintained in accordance with Section 5 hereof, Lessee shall promptly reimburse Lessor for all reasonable costs incurred to place the Equipment in such condition. Lessor shall promptly notify Lessee if equipment is not in good repair, condition and working order, ordinary wear and tear excepted, and has not been maintained in accordance with Section 5 hereof, and Lessee shall have the right of inspection within a reasonable period of time, not to exceed five days after receiving written notice of such condition from Lessor.

    13. AUTOMATIC RENEWAL. The Lease shall automatically renew for additional three-month terms until notice of termination has been properly given and the Equipment returned in accordance herewith if: (a) written notice as specified in Section 12 hereof is not received by Lessor; or (b) such notice is received by Lessor but the Equipment is not returned upon the expiration of the Initial Term. Lessee shall pay as Rent to Lessor an amount based on the average monthly rent during the Initial Term on the due dates set out in the Rental Schedules until terminated by either party by giving ninety days prior written notice. All terms and conditions of this Lease shall continue in full force and effect during any extension or renewal hereof.

    14. DEFAULT AND REMEDIES. (a) Lessee shall be in default hereunder if: (i) Lessee fails to pay Rent or any other payment required hereunder within ten (10) days of the due date thereof; (ii) Lessee fails to observe, keep or perform any other term or condition of this Lease and such failure continues for thirty days following receipt of written notice thereof from Lessor; (iii) any representation or warranty made by Lessee herein or in any document delivered to Lessor in connection herewith shall prove to be false or misleading; (iv) Lessee defaults under any other obligation to Lessor; (v) Lessee or any guarantor becomes insolvent, dissolves, or assigns its assets for the benefit of creditors, or enters any bankruptcy or reorganization proceeding; (vi) any guarantor of the Lease dies or does not perform its obligations under the guaranty; and/or (vii) Lessee undergoes a change in ownership or control of any type, that in the Lessor's judgment, results in a deterioration of Lessee's creditworthiness. (b) If Lessee is in default, Lessor shall have the right to take any one or more of the following actions: (i) cancel or terminate the Lease or any other agreement that Lessor has entered into with Lessee; (ii) proceed by appropriate court action or actions at law or in equity to enforce performance by Lessee of the terms and conditions of this Lease and/or recover damages for the breach thereof; (iii) by written notice to Lessee, which notice shall apply to all Rental Schedules hereunder except as specifically excluded therefrom by Lessor, declare due and payable, and Lessee shall without further demand, forthwith pay to Lessor an amount equal to any unpaid Rent then due as of the date of such notice plus, as liquidated damages or loss of the bargain and not as a penalty, an amount equal to the Stipulated Loss Value as set forth in the Rental Schedules; (iv) require Lessee to return the Equipment to Lessor as provided in Section 12; and/or (v) exercise any other right or remedy available at law or in equity. Should Lessee fail to return the Equipment within fifteen (15) days of receipt of legal notice, Lessor may, personally, or by its agents, and with or without notice of legal process, enter upon the premises where the Equipment is located, without liability for trespass or other damages and repossess the Equipment free from all claims by Lessee. Return or repossession of the Equipment shall not constitute a termination of this Lease unless Lessor so notifies Lessee in writing. With respect to Equipment returned to or repossessed by Lessor, if Lessor has not terminated this Lease, Lessor will, in a commercially reasonable manner, and upon such terms as Lessor may determine in its sole discretion, either sell such Equipment at one of more public or private sales or re-lease the Equipment. The proceeds of sale or re-lease shall be applied in the following order or priority: (i) to pay all Lessor's fees, costs and expenses for which Lessee is obligated pursuant to (c), below; (ii) to the extent not previously paid by Lessee, to pay Lessor its liquidated damages hereunder and all other sums then remaining unpaid hereunder; and (iii) to reimburse Lessee for any sums previously paid by Lessee to Lessor as liquidated damages; and (iv) any surplus shall be retained by Lessor. In the event the proceeds of sale or re-lease are less than the sum of the amounts payable under (i) and (ii), Lessee shall pay Lessor such deficiency, forthwith. (c) Lessee shall be liable for all reasonable legal and collection fees, costs and expenses arising from Lessee's default and the exercise of Lessor's remedies hereunder, including costs of repossessions, storage, repairs, reconditioning and sale or re-leasing of the Equipment. (d) In the event that any court of competent jurisdiction determines that any provision of this Section 14 is invalid or unenforceable in whole or in part, such determination shall not prohibit Lessor from establishing its damages sustained as a result of any breach of this Lease in any action or proceeding in which Lessor seeks to recover such damages. Any repossession sale or re-lease of the Equipment shall not bar an action for damages for

breach of this Lease, as hereinabove provided, and the bringing of an action or the entry of judgment against Lessee shall not bar Lessor's right to repossess the Equipment. No express or implied waiver by Lessor of any default shall in any way be, or be construed to be, a continuing waiver or a waiver of any future or subsequent default.

15. FURTHER ASSURANCES. Lessee agrees, at the request of Lessor, to execute and deliver to Lessor any reasonable financing statements, fixture filings or other instruments necessary for expedient filing, recording or perfecting the interest and title of Lessor in this Lease and the Equipment, agrees that a copy of this Lease and any Rental Schedule may be so filed, and agrees that all costs incurred in connection therewith (including, without limitation, filing fees and taxes) shall be paid by Lessee, and agrees to promptly, at Lessee's expense, deliver such other reasonable documents and assurances, and take such further action as Lessor may request, in order to effectively carry out the intent and purpose of this Lease and Rental Schedules. Additionally, Lessee agrees that where permitted by law, a copy of the financing statement may be filed in lieu of the original. Lessee shall, as soon as practicable, deliver to Lessor, Lessee's future quarterly and annual reports of financial condition, prepared in accordance with generally accepted accounting principles, in a manner consistently applied; which reports Lessee represents and warrants shall be prepared in accordance with Generally Accepted Accounting Principles. Lessee's covenants, representations, warranties and indemnities contained in Sections 7, 10, and 18 hereof are made for the benefit of Lessor and shall survive, remain in full force and effect and be enforceable after the expiration or termination of this Lease for any reason.

16. ACCEPTANCE OF EQUIPMENT: NON CANCELABLE. Lessee's acceptance of the Equipment shall be conclusively and irrevocably evidenced by Lessee signing the Certificate of Acceptance in the form provided or requested by Lessor and upon acceptance, the Rental Schedules shall be noncancelable for the Initial Term thereof. If Lessee cancels or terminates the Rental Schedules after its execution and prior to delivery of the Equipment or if Lessee fails or refuses to sign the Certificate of Acceptance as to all or any part of the Equipment within a reasonable time, not to exceed ten days, after the Equipment has been delivered, in which event Lessee will be deemed to have cancelled the Rental Schedule, Lessee shall automatically assume all of Lessor's purchase obligations for the Equipment and Lessee agrees to indemnify and defend Lessor from any claims, including any demand for payment of the purchase price for the Equipment, by the manufacturer or seller of the Equipment. In addition thereto, Lessee shall pay Lessor (a) all of Lessor's out-of-pocket expenses and (b) a sum equal to one percent (1%) of the total rents for the lease term as liquidated damages, the exact sum of which would be extremely difficult to determine and is reasonably estimated hereby, to reasonably compensate Lessor for credit review, document preparation, ordering equipment and other administrative expenses. Lessor may apply any advance Rent payments to sums due from Lessee under (a) and (b) above.

17. ASSIGNMENT. Lessee acknowledges and agrees that Lessor may, at any time, without notice to or consent of Lessee, assign its rights but not its obligations under this Lease and/or mortgage, or pledge or sell the Equipment. Such assignee or mortgagee may re-assign this Lease and/or mortgage without notice to Lessee. Any such assignee, buyer, transferee, grantee or mortgagee shall have and be entitled to exercise any and all rights and powers of Lessor under this Lease, but such assignee, buyer, transferee, grantee or mortgagee shall not be obligated to perform any of the obligations of Lessor hereunder other than Lessor's obligation not to disturb Lessee' quiet and peaceful possession of the Equipment and unrestricted use thereof for its intended purpose during the term thereof and for as long as Lessee is not in default of any of the provisions hereof.

Without limiting the foregoing, Lessee further acknowledges and agrees that in the event Lessee receives written notice of an assignment from Lessor, Lessee will pay all Rent and any and all other amounts payable by Lessee under any Rental Schedule to such assignee or mortgagee or as instructed by Lessor, notwithstanding any defense or claim of whatever nature, whether by reason of breach of such Rental Schedule or otherwise which it may now or hereafter have as against Lessor (Lessee reserving its right to make claims directly against Lessor). Lessee agrees to confirm in writing receipt of notice of assignment as may be reasonably requested by assignee or mortgagee.

18. REPRESENTATIONS AND WARRANTIES. Lessee represents and warrants to Lessor that: (i) the making of this Lease and any Rental Schedule thereto executed by Lessee are duly authorized on the part of Lessee and upon execution thereof by Lessee and Lessor they shall constitute valid obligations binding upon, and enforceable against, Lessee; (ii) neither the making of this Lease or such Rental Schedule, nor the due performance thereof by Lessee, including the commitment and payment of the Rent, shall result in any breach of, or constitute a default under, or violation of, Lessee's certificate of incorporation, by-laws, or any agreement to which Lessee is a party or by which Lessee is bound; (iii) Lessee is in good standing in its state of incorporation and in any jurisdiction where the Equipment is located, and is entitled to own properties and to carry on business therein; and (iv) no approval, consent or withholding of objection is required from any governmental authority or entity with respect to the entering into, or performance of this Lease or such Rental Schedules by Lessee.

Lessee shall provide Lessor a Certified Copy of its Corporate Resolutions and or a Certificate of Incumbency in the form provided by Lessor or such other form that Lessor deems acceptable.

Lessor has the power to enter into this Lease, and its execution has been duly authorized by all necessary corporate action on the part of the Lessor. Lessor is duly and validly organized and existing in good standing under the laws of the state of Indiana and has all power and authority to own its properties and carry on its business in the places where such properties are located and such business is conducted.

19. NOTICES. Any notice required or given hereunder shall be deemed properly given when provided in writing (i) three (3) business days after mailed first class, overnight, or certified mail, return receipt requested, postage prepaid, addressed to the designated recipient at its address set forth at the heading hereof or such other address as such party may advise by notice given in accordance with this provision or (ii) upon receipt by the party to whom addressed in writing by personal delivery, commercial courier service, fax or other means which provides a permanent record of the delivery of such notice.

20. DOCUMENTATION. Except for the payment of the Rent set forth in the applicable Rental Schedules, for which invoices are provided as an accommodation to Lessee and not as a condition precedent to payment, Lessor shall use its best efforts to provide Lessee with reasonable documentation, including, statements, tax bills and/or invoices, evidencing payment obligations or reimbursement due to Lessor pursuant to the terms of this Lease.

21. LESSEE'S OBLIGATIONS UNCONDITIONAL: NO OFFSET. This Lease is a net lease and except as expressly provided for herein, the Lessee shall not be entitled to any abatement or reduction of rent and Lessee hereby agrees that Lessee's obligation to pay all rent and other amounts hereunder shall be absolute and unconditional under all circumstances.

22. GOVERNING LAW. This Lease and any Rental Schedules thereto are entered into, under and shall be construed in accordance with, and governed by, the laws of the State of Ohio without giving effect to its conflicts of laws principles. The State of Ohio shall have exclusive jurisdiction over any action or proceeding brought to enforce or interpret this Lease or otherwise in connection therewith. LESSEE AND LESSOR EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY.

23. FINANCE LEASE STATUS: Lessee agrees that if Article 2A-Leases of the Uniform Commercial Code applies to this Master Lease Agreement and any and all Rental Schedules to this Master Lease Agreement, the Master Lease Agreement and Rental Schedules shall be considered a "Finance Lease" as that term is defined in Article 2A. By signing this Master Lease Agreement and any Rental Schedules, Lessee agrees that either (a) Lessee has reviewed, approved, and received a copy of the supply contract or (b) that Lessor has informed Lessee of the identity of the supplier, that Lessee may have rights under the supply contract, and that Lessee may contact the supplier for a description of those rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A.

24. MISCELLANEOUS. The captions of this Lease are for convenience only and shall not be read to define or limit the intent of the provision which follows such captions. This Lease contains the entire agreement and understanding between Lessor and Lessee relating to the subject matter hereof. Any variation or modification hereof and any waiver of any of the provisions or conditions hereof shall not be valid unless in writing signed by an authorized representative of the parties hereto. Any provision of this Lease which is unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Lessor's failure at any time to require strict performance by Lessee or any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith or with any other provision. The term "Lessee" as used herein shall mean and include any and all Lessees who have signed this Lease, each of whom shall be jointly and severally bound thereby.

THIS LEASE IS A NON-CANCELABLE LEASE. THIS LEASE IS SUBJECT TO THE TERMS AND CONDITIONS WRITTEN ABOVE WHICH LESSEE ACKNOWLEDGES HAVING READ. THIS LEASE SHALL BE EFFECTIVE UPON EXECUTION BY LESSEE AND LESSOR.

| Lessor | Lessee |
|---|---|
| National City Commercial Capital Company, LLC | My Ranch, Inc. |
| By: *[signature]* | By: *[signature]* |
| Print Name: KRIS McNUTT | Print Name: Cecelia Johnson |
| Title: Documentation Mgr | Title: President |
| Date Accepted: June 5, 2008 | Date Accepted: 4/21/08 |

# National City.
## Commercial Capital

### AMENDMENT TO FINAL RENTAL SCHEDULE NO 110804000

THIS AMENDMENT ("Amendment"), dated and effective the 4th day of June, 2008, to Final Rental Schedule No. 110804000 ("Schedule") is attached to and governed by the terms of the Master Lease Agreement dated April 18, 2008 ("Master Lease") by and between My Ranch, Inc. ("Lessee") and National City Commercial Capital Company, LLC, an Indiana limited liability company ("Lessor").

In consideration of the mutual covenants contained herein and other valuable consideration received, and with the intent to be legally bound, the parties agree to amend the Schedule as follows:

The *first sentence of Section 2* of the Schedule reading "The Initial Term of the lease of the Equipment shall commence upon the Acceptance Date as indicated on the Certificate of Acceptance (the "Lease Commencement Date") and shall continue until expiration of the number of payment periods specified above after the Rental Commencement Date, which shall be the first day of the first calendar month following the Lease Commencement Date." *is hereby deleted*.

The *first sentence of Section 2* of the Schedule shall be replaced with the following: "The Initial Term of the lease of the Equipment shall commence on 15th day (the "Lease Commencement Date") and shall continue until the expiration of the number of payments specified above after the Rental Commencement Date, which shall be the same as the Lease Commencement Date."

All other terms and conditions of the Schedule shall remain in full force and effect.

IN WITNESS WHEREOF, the Lessee hereto has caused this Amendment to be executed as of the date written above.

Lessor:
National City Commercial Capital, LLC

By: *Kris McNutt*
Name: *Kris McNutt*
Title: *Documentation Mgr.*

Lessee:
My Ranch, Inc.

By: *Cecelia Johnson*
Name: *Cecelia Johnson*
Title: *President*

**National City.**

Commercial Capital

## AMENDMENT TO LEASE # 110804000

This Amendment ("Amendment"), dated and effective as of the 18th day of April, 2008, supplements and is made a part of Lease #110804000 ("Lease") between My Ranch, Inc. ("Lessee") and National City Commercial Capital Company, LLC ("Lessor").

In consideration of the mutual covenants contained herein and other valuable consideration received, and with the intent to be legally bound, the parties agree to amend the Lease as follows:

Lessor hereby acknowledges that Lessee shall purchase the equipment ("Equipment") described in Lease #110804000 for one dollar ($1.00) at lease expiration. In order to exercise the $1.00 buyout, Lessee must not be in default under any of the provisions of the Lease.

Lessee shall file as the owner of the Equipment for the payment of personal property tax and shall report the Equipment as owned equipment on Lessee's business property tax return. Lessee shall promptly pay in full for all property taxes levied on or assessed against the Equipment listed on Lease # 110804000 during the initial term and all renewals and extensions. Lessee shall provide proof of said filing or payment to Lessor upon request.

All other terms and conditions of the Lease shall remain in full force and effect.

IN WITNESS WHEREOF the parties hereto have caused this Amendment to be executed as of the date written above.

**My Ranch, Inc.**

By: *[signature]*
Name: Cecelia Johnson
Title: President

**National City Commercial Capital Company, LLC**

By: *[signature]*
Name: Kris McNutt
Title: Documentation Mgr

**National City.**

Commercial Capital

EXHIBIT A

**FINAL RENTAL SCHEDULE NO. 110804000**

This Final Rental Schedule dated and effective as of the 4th day of June, 2008 is attached to and governed by the terms and provisions of the Master Lease Agreement dated April 18, 2008 ("Lease") by and between National City Commercial Capital Company, LLC ("Lessor") and My Ranch, Inc. ("Lessee").

All the terms used herein which are defined in the Lease shall have the same meaning herein.

1. The Equipment leased hereunder is as follows:

**See attached Final Equipment Schedule A**

**Lease Terms:**

**Initial Term:** 60 Months
**Rental Commencement Date:** 6-15-08
**Rent:** $2,044.66 payable monthly in advance, plus applicable taxes
**On Stream and Use Tax:** $189.13 payable monthly in advance

2. The Initial Term of the lease of the Equipment shall commence upon the Acceptance Date as indicated on the Certificate of Acceptance (the "Lease Commencement Date") and shall continue until expiration of the number of payment periods specified above after the Rental Commencement Date, which shall be the first day of the first calendar month following the Lease Commencement Date. Lessee hereby authorizes Lessor to insert the Rental Commencement Date upon its receipt of the Certificate of Acceptance. Rent in the amount specified above, plus applicable taxes, shall be due on the Rental Commencement Date and on the same day of each and every consecutive payment period thereafter for the Initial Term. All Rent shall be due and payable to Lessor at such place as Lessor shall designate in writing. Additionally, Lessee shall pay, as interim rent, due and payable monthly in arrears, for the period from and including the Lease Commencement Date to and including the day immediately preceding the Rental Commencement Date. The daily rent will be calculated on a 360-day year.

3. Options. Notwithstanding anything contained in the Lease to the contrary, so long as no default shall have occurred and be continuing, Lessee may, at Lessee's option, (i) purchase the Equipment leased pursuant to this Rental Schedule on an "as is, where is" basis, without representation or warranty, express or implied, at the end of the Initial Term at a price equal to the Fair Market Value thereof, plus applicable taxes, or (ii) extend the term of the Initial

or warranty, express or implied, at the end of the Initial Term at a price equal to the Fair Market Value thereof, plus applicable taxes, or (ii) extend the term of the Initial Term with respect to the Equipment leased pursuant to this Rental Schedule for the Fair Market Rental, plus applicable taxes, and for a period of time mutually agreeable to Lessor and Lessee. "Fair Market Rental" shall be equal to the monthly rental that could be obtained in an arms-length transaction between an informed and willing lessee and an informed and willing lessor under no compulsion to lease. "Fair Market Value" shall be equal to the value which would be obtained in an arms-length transaction between an informed and willing buyer and an informed and willing seller under no compulsion to sell, and in such determination, costs of removal of the Equipment from its location of current use shall not be a deduction from such value. If Lessee and Lessor cannot agree on the Fair Market Value thereof, such value shall be determined by appraisal at the sole expense of Lessee. Appraisal shall be a procedure whereby two recognized independent appraisers, one chosen by Lessee and one by Lessor, shall mutually agree upon the amount in question. If the appraisers are unable to agree upon the amount in question, a third recognized independent appraiser's evaluation shall be binding and conclusive on Lessee and Lessor. This purchase or extension option as applicable shall only be available if Lessee gives Lessor ninety days prior written notice of Lessee's irrevocable intent to exercise such option and Lessor and Lessee shall have agreed to all terms and conditions of such purchase or extension prior to the expiration date of the Initial Term.

6. All options awarded to Lessee shall apply to all but not less than all of the Equipment leased under this Rental Schedule.

IN WITNESS WHEREOF, the parties hereto have caused this Interim Rental Schedule to be duly executed on the date set forth below by their authorized representatives.

THIS RENTAL SCHEDULE CANNOT BE CANCELLED

**Lessor:**
National City Commercial
Capital Company, LLC

By: _Kris McNutt_
Title: _Documentation Mgr_
Date: _June 5, 2008_

**Lessee:**
My Ranch, Inc.

By: _Cyril Johnson_
Title: _President_
Date: _4/21/08_

# Final Equipment Schedule A
## For
## Lease #110804000
## Dated June 4, 2008

| Quantity | Description | Serial No. |
|---|---|---|
| 1 | BAILER-(JOHN BOOS MODEL | |
| 1 | INSTALLATION | |
| 1 | FORK LIFT-JOHN BOOS MODEL | |
| 1 | OVEN, GAS REVOLVING TRAY | |
| 1 | FREIGHT | |
| 1 | INSTALLATION | |
| 5 | SELF-SERVICE NON-REFRIGERATED MERCHANDISER | |
| 5 | FREIGHT | |
| 5 | INSTALLATION | |
| 5 | SOLID BACK PANEL | |
| 5 | BASKET LINER (4" HIGH) | |
| 1 | FLORAL MERCHANDISER | |
| 1 | INSTALLATION | |
| 1 | PRESSURE FRYER, GAS | |
| 1 | INSTALLATION | |
| 1 | SLICER, FOOD M#13A | |
| 1 | SLICER, FOOD M#13 | |

Lessee's Initials

# National City.
## Commercial Capital

### EXHIBIT A

### REVISED RENTAL SCHEDULE NO. 110804001

This Rental Schedule dated and effective as of the 25th day of June, 2008 is attached to and governed by the terms and provisions of the Master Lease Agreement dated April 18, 2008 ("Lease") by and between National City Commercial Capital Company, LLC ("Lessor") and My Ranch, Inc. ("Lessee").

All the terms used herein which are defined in the Lease shall have the same meaning herein.

1. The Equipment leased hereunder is as follows:

| Quantity | Description | Serial No. |
|---|---|---|
| 1 | BATCH FREEZER, ICE CREAM/YOGURT | |
| 1 | JUICER, ELECTRIC | |
| 1 | DISPLAY CASE, GELATO/ICE CREAM | |
| 1 | COFFEE BREWER FOR GLASS DECNATERS | |
| 1 | EVERPURE EV9272-41 QC71 | |
| 1 | CAPPUCCINO MACHINE | |
| 1 | EVERPURE EV9330-42 HIGH FLOW CSR TWIN FILTER SYSTEM | |
| 1 | REFRIGERATED COUNTER, SANDWICH TOP | |
| 1 | REFRIG... UNDERCOUNTER | |
| 2 | BLENDER, BAR TYPE | |
| 1 | ICE MAKER W/BIN, CUBE-STYLE | |
| 1 | 3 YEAR PARTS & LABOR WARRANTIES | |
| 1 | 5 YEAR PARTS & LABOR ON EVAPORATOR | |
| 1 | EVERPURE EV9324-22 INSURICE 2000 TWIN SYSTEM | |
| 1 | INSTALLATION | |
| 1 | 4 YEAR COMPRESSOR WARRANTY (NET) | |
| 1 | FREIGHT | |

Lease Terms:

Initial Term: 60 Months
Rental Commencement Date: _7-15-08_
Rent: $1,061.09 payable Monthly in Advance, plus applicable taxes
On Stream and Sales and Use Tax: $98.15 payable monthly in advance

2. The Initial Term of the lease of the Equipment shall commence upon the Acceptance Date as indicated on the Certificate of Acceptance (the "Lease Commencement Date") and shall continue until expiration of the number of payment periods specified above after the Rental Commencement Date. Lessee hereby authorizes Lessor to insert the Rental Commencement Date upon its receipt of the Certificate of Acceptance. Rent in the amount specified above, plus applicable taxes, shall be due on the Rental Commencement Date and on the same day of each and every consecutive payment period thereafter for the Initial Term. All Rent shall be due and payable to Lessor at such place as Lessor shall designate in writing. Additionally, Lessee shall pay, as interim rent, due and payable monthly in arrears, for the period from and including the Lease Commencement Date to and including the day immediately preceding the Rental Commencement Date. The daily rent will be calculated on a 360-day year.

3. Stipulated Loss Values are set out on Exhibit #1 attached hereto and incorporated herein.

4. Options. Lessor hereby acknowledges that Lessee shall purchase the equipment described in this Rental Schedule for one dollar ($1.00) at lease expiration. In order to exercise the $1.00 buyout, Lessee must not be in default under any of the provisions of the Lease. Lessee shall file, as party responsible for payment of personal property tax. Lessee shall promptly pay in full for all property taxes levied on or assessed against the Equipment listed on this Rental Schedule during the initial term and all renewals and extensions. Lessee shall provide proof of said filing or payment to Lessor upon request.

5. All Options awarded to Lessee shall apply to all, but not less than all, Equipment leased under this schedule.

IN WITNESS WHEREOF, the parties hereto have caused this Rental Schedule to be duly executed on the date set forth below by their authorized representatives.

THIS RENTAL SCHEDULE CANNOT BE CANCELLED

Lessor:  
**National City Commercial Capital Company, LLC**  
By: _____  
Title: Document Supervisor  
Date: 7-10-08

Lessee:  
**My Ranch, Inc.**  
By: _____  
Title: President  
Date: 7/9/08

## Exhibit #1

### Stipulated Loss of Value Schedule
### Rental Schedule No. 110804001

The Stipulated Loss Value for the Equipment (or any item thereof) shall be determined by multiplying Invoice Cost [as set forth in the Equipment vendor invoice(s)] by the percentage amount shown below which corresponds with the month during the Initial Term in which the determination was made:

| Month of initial term | Charge Pct. | Month of Initial term | Charge Pct. |
|---|---|---|---|
| 1 | 120.00% | 31 | 58.98% |
| 2 | 117.97% | 32 | 56.95% |
| 3 | 115.93% | 33 | 54.92% |
| 4 | 113.90% | 34 | 52.88% |
| 5 | 111.86% | 35 | 50.85% |
| 6 | 109.83% | 36 | 48.81% |
| 7 | 107.80% | 37 | 46.78% |
| 8 | 105.76% | 38 | 44.75% |
| 9 | 103.73% | 39 | 42.71% |
| 10 | 101.69% | 40 | 40.68% |
| 11 | 99.66% | 41 | 38.64% |
| 12 | 97.63% | 42 | 36.61% |
| 13 | 95.59% | 43 | 34.58% |
| 14 | 93.56% | 44 | 32.54% |
| 15 | 91.53% | 45 | 30.51% |
| 16 | 89.49% | 46 | 28.47% |
| 17 | 87.46% | 47 | 26.44% |
| 18 | 85.42% | 48 | 24.41% |
| 19 | 83.39% | 49 | 22.37% |
| 20 | 81.36% | 50 | 20.34% |
| 21 | 79.32% | 51 | 18.31% |
| 22 | 77.29% | 52 | 16.27% |
| 23 | 75.25% | 53 | 14.24% |
| 24 | 73.22% | 54 | 12.20% |
| 25 | 71.19% | 55 | 10.17% |
| 26 | 69.15% | 56 | 8.14% |
| 27 | 67.12% | 57 | 6.10% |
| 28 | 65.08% | 58 | 4.07% |
| 29 | 63.05% | 59 | 2.03% |
| 30 | 61.02% | 60 | 0.00% |

Upon expiration of the Renewal Term, and until the Equipment is delivered to Lessor, the Stipulated Loss Value of any item of Equipment shall be 0% of the Invoice Cost.

Lessee (initial) _____        Lessor (initial) _____

## Annex A

### FINAL CERTIFICATE OF ACCEPTANCE
to
Final Rental Schedule No. 110804000
Dated June 4, 2008

In compliance with the terms, conditions and provisions of the Master Lease Agreement dated April 18, 2008 ("Lease") by and between the undersigned ("Lessee") and National City Commercial Capital Company, LLC ("Lessor"), Lessee hereby:

(a) certifies and warrants that all Equipment described in the above-referenced Final Rental Schedule (the "Equipment") is delivered, inspected and fully installed, and operational as of the Acceptance Date as indicated below;

(b) accepts all the Equipment, for all purposes under the Lease and all attendant documents as of this ____ day of _____, 2008 ("Acceptance Date"); and

(c) restates and reaffirms, as of such Acceptance Date, each of the representations, warranties and covenants heretofore given to Lessor in the Lease.

Lessor is hereby authorized to insert serial numbers on the Final Rental Schedule.

Lessee: **My Ranch, Inc.**

By: _____

Title: __President__

Annex A

## CERTIFICATE OF ACCEPTANCE
to
Rental Schedule No. 110804001
Dated June 25, 2008

In compliance with the terms, conditions and provisions of the Master Lease Agreement dated April 18, 2008 ("Lease") by and between the undersigned ("Lessee") and National City Commercial Capital Company, LLC ("Lessor"), Lessee hereby:

(a) certifies and warrants that all Equipment described in the above-referenced Rental Schedule (the "Equipment") is delivered, inspected and fully installed, and operational as of the Acceptance Date as indicated below;

(b) accepts all the Equipment for all purposes under the Lease and all attendant documents as of this __25__ day of __June__, 2008 ("Acceptance Date"); and

(c) restates and reaffirms, as of such Acceptance Date, each of the representations, warranties and covenants heretofore given to Lessor in the Lease.

Lessor is hereby authorized to insert serial numbers on the Rental Schedule.

Lessee:
My Ranch, Inc.

By: _[signature]_
Title: _President_