## PURCHASE OF RECEIVABLES AGREEMENT

The Business Backer, LLC ("TBB") purchases from Merchant, and Merchant sells to TBB, Merchant's current and future customer receivables ("Receivables") in the amount specified herein (the "Purchase Amount"), consisting of among other things, accounts and rights from the payment of funds from Merchant's customers' use of credit and debit cards ("Card Receivables"). Upon Merchant demonstrating to TBB (to TBB's reasonable satisfaction as judged by industry standards) that Merchant and a credit card processor acceptable to TBB ("Processor") have achieved two successful processing days, TBB shall pay to Merchant the purchase price specified herein (the "Purchase Price") for the purchase of the Receivables. Said demonstration shall be a condition precedent to TBB's obligation to purchase the Receivables and to pay the Purchase Price. Merchant promises to deliver to TBB the Purchase Amount by providing TBB with the percentage set forth herein of all of Merchant's Card Receivables (the "Delivery Percentage") until the Purchase Amount has been received by TBB. In connection therewith, Merchant and TBB shall contemporaneously execute a Processing Order (the "Processing Order") which, among other things, shall irrevocably authorize and direct Processor to pay all Card Receivables, less Processor's fees and charges, only to the Account.



**THE BUSINESS BACKER™**
One Call Can Fund Your Future™
toll free] 866.615.4747 • fax] 866.430.3352

Purchase Price: __$27,000.00__   Purchase Amount: __$35,100.00__   Delivery Percentage: __15.00%__

Merchant and the undersigned Guarantor(s) hereby certify that, as of the date hereof, the information given in Merchant's Merchant Application dated February 23 2010, a copy of which is attached hereto (check applicable box and initial):

___*RO*___ is true and correct with changes noted thereon.
initials:

_____
initials:

_____
initials:

My Ranch, Inc. - DIP - dba Fresh Harvest Market

Page 1 of 5          **ADDITIONAL TERMS AND CONDITIONS FOLLOW**          rev 02-22-08

**SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS
WHICH ARE PART OF THIS AGREEMENT.**

AGREED:

| My Ranch, Inc. - DIP | The Business Backer, LLC |
|---|---|
| Merchant Name (Printed) | |
| By: *[signature: Rasheeda Oghafua]* | By: |
| Signature | Signature |
| Rasheeda Oghafua | |
| Signor's Name (Printed) | Signor's Name (Printed) |
| President | |
| Title | Title |
| 2/23/2010 | |
| Date | Date |

Witness' Name (Printed)

Signature

Date

## GUARANTY

Each of the undersigned unconditionally, absolutely and irrevocably, jointly and severally, guarantees the performance of all obligations of Merchant under this Agreement (including, but not limited to, the full payment by Merchant of all amounts it may from time to time owe to TBB under this Agreement). In the event payments are not made by Merchant on a timely basis, all amounts then due to TBB and unpaid under this Agreement shall become due and collectible from each of the undersigned Immediately.

| Rasheeda Oghafua | By: *[signature: Rasheeda Oghafua]* | 2/23/2010 |
|---|---|---|
| Guarantor's Name (printed) | Signature | Date |
| Cecelia Johnson | By: | 2/23/2010 |
| Guarantor's Name (printed) | Signature | Date |
| | By: | |
| Guarantor's Name (printed) | Signature | Date |

Terms And Conditions

1. **Agreement; Acceptance.** This agreement, together with the documents referred to herein ("Agreement"), constitutes Merchant's offer to TBB upon the terms and conditions stated herein and shall become a binding contract on the terms and conditions set forth herein when it is accepted either by TBB's signature or performance. In the event of a conflict between the provisions of these Terms and Conditions and the provisions of any of the documents referred to herein, the provisions of these Terms and Conditions shall control. This Agreement expressly limits acceptance to the terms and conditions stated herein. Upon acceptance, this Agreement shall constitute the entire agreement between Merchant and TBB. This Agreement may not be altered or modified except in a writing duly executed by each party. This Agreement shall be in full force and effect until the entire Purchase Amount has been received by TBB. "Affiliate" means, with respect to any person, any other person which directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with such person.

2. **The Account.** Merchant's sole bank account ("Account") into which all proceeds of Receivables will be deposited is the account shown on the face of the voided check that Merchant shall provide to TBB along with this Agreement. Merchant shall maintain in the Account at all times a minimum balance equal to the Delivery Percentage then-owed to TBB. Merchant and Guarantor(s) authorize TBB to debit the Delivery Percentage directly from the Account on a daily basis (or such other frequency as TBB may determine) via the automated clearing house ("ACH") system. Merchant and Guarantor(s) agree to not revoke or cancel such authorization until such time as TBB has received the entire Purchase Amount. Merchant agrees that TBB and Processor may issue a pre-notification to the bank at which the Account is located (the "Bank") with respect to such debit transactions. Merchant acknowledges and agrees that (i) TBB is not affiliated with the Bank (except with regard to any banking relationship), (ii) except as normally associated with bank accounts and as provided herein, TBB does not have the power or authority to control the Bank's actions, (iii) TBB is not responsible for the Bank's actions, and (iv) Merchant releases and holds TBB harmless for claims arising from or related to the Bank's actions or activities. Within 15 days after TBB provides notice to Merchant that the entire Purchase Amount has been received, Merchant and TBB shall provide a written termination of the Processing Order to Processor. Upon providing such notice to Merchant, TBB shall have no liability to Merchant with regard to the Account. Any fees, costs or expenses associated with the Account that are charged or are incurred by TBB as a result of there being insufficient funds in the Account to cover a debit of the Delivery Percentage by TBB shall be the responsibility of Merchant, and such fees shall be added to the amount due TBB to the extent such charges are incurred by TBB. Merchant hereby authorizes TBB to debit the Account for such fees, costs and expenses. **IN THE EVENT TBB DEBITS FROM THE ACCOUNT AN AMOUNT IN EXCESS OF THE AMOUNT THEN DUE TBB, TBB'S SOLE LIABILITY TO MERCHANT SHALL BE TO RETURN THE EXCESS AMOUNT TO MERCHANT AND THE PROVISIONS OF SECTION 14 HEREOF SHALL APPLY.**

3. **Representations, Warranties and Covenants.** Merchant and Guarantor(s), jointly and severally, make the following representations, warranties and covenants as of the date hereof and at all times during the term of this Agreement (each of the following statements being a representation, warranty and a covenant):

(i) Organization. Merchant (a) is duly organized, validly existing and in good standing under the laws of the jurisdictions in which it is organized and/or operates, and (b) possesses and is in compliance with all permits, licenses, approvals and other authorizations necessary to own, operate and lease its properties and to conduct its business;

(ii) Authorization. Merchant has full power and authority to enter into this Agreement and to carry out its obligations hereunder. The execution, delivery and performance of this Agreement by Merchant have been duly and validly authorized by the board of directors, managers, partners, shareholders or members, as applicable, of Merchant and no other act or proceeding on the part of Merchant is necessary to authorize the execution and delivery by Merchant of this Agreement;

(iii) Compliance. Merchant is in compliance with all applicable federal, state and local laws and regulations, and the rules and regulations of card associations and payment networks;

(iv) Information; Financial Condition. All information provided to TBB in connection with this Agreement is true, accurate and complete in all respects. All financial information provided to TBB fairly presents the financial position of Merchant on the dates thereof, fairly presents the results of operations of Merchant for the periods involved, and is in accordance with the books and records of Merchant. Merchant acknowledges that all information provided to TBB has been relied upon by TBB in connection with its decision to enter into this Agreement. Merchant shall furnish TBB and Processor such financial and business information as TBB may request from time to time. Merchant is solvent and capable of honoring the financial commitments set forth in this Agreement;

(v) Business Purpose. Merchant is entering into this Agreement for business purposes and not for personal, family or household purposes;

(vi) Receivables. Merchant has good and marketable title to the Receivables, free and clear of any and all liens, mortgages, security interests, pledges and encumbrances of any kind or nature or any other rights or interests that may be adverse to the interests of TBB. The Receivables are and will be bona fide obligations created by the sale and delivery of goods or the rendition of services in the ordinary course of Merchant's business, and unconditionally owed and will be paid without defenses, disputes, offsets, counterclaims or rights of return or cancellation;

(vii) Accounts. The sole bank account into which all proceeds of Card Receivables will be deposited is the Account. If Processor transfers to another account(s) any funds that should have been transferred to the Account pursuant to the Processing Order, or if Merchant otherwise has monies deposited in any account(s) that otherwise should have been transferred to the Account pursuant to the Processing Order, such funds shall be deemed to be held in trust for TBB's benefit. Merchant and Guarantor(s) authorize TBB to debit such funds directly from all such accounts via the ACH system, and agree to not revoke or cancel such authorizations until such time as TBB has received the entire Purchase Amount. Merchant agrees that TBB may issue a pre-notification to Merchant's and/or Guarantor(s)'s bank(s) with respect to such debit transactions. Within 24 hours of any request by TBB, Merchant shall provide, or cause Processor to provide, TBB with records and other information regarding Merchant's credit card sales and any account(s) of Merchant or Guarantor(s);

(viii) Operation of Business. Merchant shall conduct its business in the ordinary course, consistent with past practice, and shall not cease operations. Merchant does not and shall not conduct business under any name other than as disclosed to TBB and shall not change its place of business without at least 30 days prior written notice to TBB;

(ix) Processor. Merchant shall exclusively use Processor for the processing of all of its credit card transactions, and shall not change its arrangements with Processor in any way that is adverse to TBB;

(x) Credit Card Transactions. Merchant shall not take any action to discourage its customers' use of credit cards and shall not permit any event to occur that could have an adverse effect on the use, acceptance or authorization of credit cards for the purchase of Merchant's services and/or goods;

(xi) Insurance. Merchant shall maintain insurance in such amounts and against such risks as are consistent with past practice and shall show proof of such insurance upon TBB's request. Merchant shall cause TBB to be named as an additional insured on such policy(ies) if so requested;

(xii) Other Accounts. Merchant shall not use or open an account (other than the Account) to which credit card settlement proceeds will be deposited and shall not take any action to cause Card Receivables to be settled or delivered to any account other than the Account;

(xiii) Working Capital Funding. Merchant shall not enter into any agreement relating to or involving Receivables or credit card sales (i.e. factoring, purchase, sale, loan against, or sale or purchase of credits against) with any person other than TBB;

(xiv) Sale of Business. The business of Merchant shall not be sold, disposed of, conveyed or otherwise transferred (whether by merger, sale of assets or stock or otherwise) without the prior written consent of TBB.

4. **Change of Processing Method.** Upon the prior written notice of TBB to Merchant and Processor, TBB may, in TBB's sole discretion, require the parties to immediately implement an alternative processing method whereby the Delivery Percentage and the Purchase Amount are delivered to TBB.

5. **Relationship of Parties.** The relationship of Merchant and TBB is that of seller and buyer, and nothing herein shall be construed or deemed as creating any other relationship. Neither party is or shall represent itself to be the agent, employee, partner, or joint venturer of the other. Merchant and TBB agree that the Purchase Price paid by TBB in exchange for the Receivables is a purchase, and is not intended to be, nor shall it be construed as, a loan.

6. **Financing Statements; Collateral.** To evidence the sale of Receivables to TBB and to secure the performance of Merchant's obligations to TBB under this Agreement or any other agreement between Merchant and TBB, Merchant grants to TBB a continuing priority security interest in all assets of Merchant, wherever located, now or hereafter owned or acquired by Merchant, and the proceeds thereof (the "Collateral"), including, but not limited to: (i) all personal property, including, all accounts (other than the Receivables sold to TBB hereunder), documents, equipment, general intangibles, instruments, inventory (as those terms are defined in the Uniform Commercial Code in effect from time-to-time in the State of Ohio), and liquor permits/licenses; and (ii) all trademarks, trade names, service marks, logos and other business identifiers, and all registrations and applications with any governmental agency and all renewals, reissues and extensions thereof. TBB may file at any time one or more financing statements and such other instruments as TBB determines is necessary or desirable to protect TBB's security interest. The financing statements may state that the sale of Receivables is intended to be a sale, not an assignment of a security interest. Merchant acknowledges and agrees that TBB may use "doing business as" or "dba" or other names relating to transactions between Merchant and TBB, including, but not limited to, the filing of financing statements. From time to time as requested by TBB, TBB or its designee shall have access, during reasonable business hours if prior to an Event of Default and at any time on or after an Event of Default, to all premises where Collateral is located for the purposes of inspecting (and removing, if after the occurrence of an Event of Default) any of the Collateral, including Merchant's books and records, and Merchant shall permit TBB or its designee to make copies of such books and records or extracts therefrom as TBB may request.

7. **No Repurchase Rights.** Merchant acknowledges and agrees that it has no right to repurchase the Purchase Amount of Receivables from TBB and TBB may not force Merchant to repurchase the Purchase Amount of Receivables.

8. **Credit Checks.** Merchant and Guarantor(s) each authorize TBB and any credit reporting agency engaged by TBB to (i) investigate any references given or any other statements or data obtained from or about Merchant or Guarantor(s), and (ii) pull credit reports at any time now or for so long as Merchant continues to owe any obligation to TBB, or to enable TBB to decide whether to enter into any future agreement with Merchant.

9. **Certain Authorizations.** Merchant and Guarantor(s) each authorizes TBB to disclose to any third party information concerning Merchant's and Guarantor(s)'s credit standing (including credit bureau reports that TBB obtains) and business conduct. Merchant and Guarantor(s) each waives, to the maximum extent permitted by law, any claim for damages against TBB, its officers, managers, members and Affiliates, relating to any (i) investigation undertaken by or on behalf of TBB permitted by this Agreement, and/or (ii) disclosure of information permitted by this Agreement. For so long as this Agreement is in effect, in order to satisfy any of Merchant's obligations to TBB, TBB is authorized by Merchant to initiate electronic debit or credit entries through the ACH system to any deposit account maintained by Merchant wherever located.

10. **Communications and Publicity.** Merchant and Guarantor(s) each authorizes TBB to communicate with, solicit and/or market to Merchant and Guarantor(s) via regular mail, telephone, email, facsimile and other methods in connection with the provision of goods or services offered by TBB or any third party with or to whom TBB shares, transfers, exchanges, discloses or provides information. Merchant and Guarantor(s) each authorizes TBB to use its, his or her name in a listing of clients and in advertising and marketing materials.

11. **Events of Default and Remedies.** The occurrence of any of the following shall constitute an "Event of Default" hereunder: (i) if there shall be insufficient funds in the Account to cover any proper attempted debit by TBB provided such amount is not paid to TBB within 3 days after Merchant is notified of such insufficiency; (ii) Merchant or Guarantor(s) shall violate any term or covenant of this Agreement; (iii) any representation or warranty by Merchant or Guarantor(s) shall prove to be or have been incorrect, false or misleading in any material respect; (iv) Merchant or Guarantor(s) shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors, or any proceeding shall be initiated by or against Merchant or Guarantor(s) seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment or composition of its debts; (v) Merchant shall suspend, dissolve or terminate its business; (vi) Merchant shall use multiple credit card processing terminals without the prior written consent of TBB; (vii) Merchant shall change its credit card processor without the prior written consent of TBB; or (viii) Merchant shall default under any of the terms, covenants and condition of any other agreement with TBB. In case any Event of Default shall occur, (i) TBB may protect and enforce its rights and remedies by litigation, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the performance of Merchant's or Guarantor(s)'s obligations hereunder or any other legal or equitable right or remedy, and (ii) TBB shall have the option to purchase any and all liquor permits/licenses of Merchant for a total purchase price of $1.00 by giving written notice thereof to Merchant in which event Merchant shall duly execute all necessary transfer documents within 3 business days. In the event Merchant's liquor permits/licenses are duly transferred to TBB, the reasonable fair market value thereof or the purchase price TBB obtains therefor from a third party, as applicable, shall be credited to the amount owed TBB by Merchant. All rights, powers and remedies of TBB in connection with this Agreement may be exercised at any time by TBB after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity. Without limiting the generality of the foregoing, TBB shall be immediately entitled to, but not be limited to, damages equal to the amount by which the Purchase Amount exceeds the amount of cash received from Receivables that have previously been delivered by Merchant to TBB pursuant to this Agreement. Merchant hereby agrees that TBB and Processor may automatically debit such damages from Merchant's and/or Guarantor(s)'s bank account(s) via the ACH system. At TBB's sole discretion, the Delivery Percentage may be doubled after the occurrence of an Event of Default to recover any damages in lieu of immediate full recovery. In case any Event of

Default shall occur, Merchant irrevocably appoints TBB as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to TBB from Processor or from Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect amounts due or to become due in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts or other instruments; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to TBB; (v) to sign on Merchant's behalf any and all transfer documents to transfer Merchant's liquor permits/licenses to TBB in accordance with applicable law; and/or (vi) to file any claims or take any other action which TBB may deem necessary for the collection of any of the unpaid Purchase Amount. The obligations of Guarantor(s) are primary and unconditional and Guarantor(s) waives any right to require TBB to first proceed against Merchant.

12. **Assignment.** Merchant and Guarantor(s) may not assign or delegate their rights or obligations hereunder or any interest herein without the prior written consent of TBB, which consent may be withheld in TBB's sole discretion. TBB shall have the right to assign this Agreement without Merchant's prior written consent, with or without prior notice to Merchant.

13. **Waiver.** Failure of TBB to insist on performance of any of the terms and conditions or requirements of this Agreement shall not be construed as a waiver of such terms, conditions or requirements or of any subsequent breach by Merchant and shall not affect the right of TBB to enforce each and every term, condition or requirement hereof.

14. **Limitation of Damages.** IN CONNECTION WITH A BREACH OF THIS AGREEMENT BY TBB, IN NO EVENT SHALL TBB BE LIABLE FOR MERCHANT'S OR ANY OTHER PERSON(S)'S CONSEQUENTIAL OR INCIDENTAL DAMAGES RESULTING FROM TBB'S PERFORMANCE/NON-PERFORMANCE UNDER THIS AGREEMENT, EVEN IF TBB HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN ANY EVENT, TBB'S LIABILITY TO MERCHANT SHALL NOT BE IN EXCESS OF THE PURCHASE PRICE.

15. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of Merchant, Guarantor(s), TBB and their respective successors and permitted assigns.

16. **Indemnity.** Merchant, Guarantor(s), their successors and permitted assignees and Affiliates, shall forever protect, indemnify and hold harmless TBB, its successors, assigns, officers, managers, members and Affiliates, against all damages, expenses, claims, suits, demands, costs, attorneys' fees or losses arising out of or alleged to have arisen out of or in connection with the conduct of Merchant's business and/or Merchant's performance/non-performance of any of the terms or conditions of this Agreement.

17. **Governing Law; Venue.** This Agreement, and all disputes relating thereto, shall be governed by and construed in accordance with the laws of the State of Ohio, without regard to conflict of laws principles, and the parties irrevocably consent to the exclusive jurisdiction and venue of the courts located in Montgomery County, Ohio with respect to any dispute relating to this Agreement.

18. **Severability.** In the event any provision of this Agreement shall be deemed to be invalid or unenforceable by a court of competent jurisdiction, the court shall have the power to rewrite said provision to the maximum extent enforceable and the remainder of this Agreement shall continue in full force and effect.

19. **Headings.** The headings contained in this Agreement are inserted for convenience only and in no way define, limit, or extend the scope or intent of any provision.

20. **Collection.** Merchant agrees to reimburse any sums expended by TBB, including but not limited to, attorneys' fees, in collection of payment for any amount due to TBB hereunder.

21. **Jury Waiver.** IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (i) ARISING HEREUNDER, OR (ii) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.

22. **Survival.** All provisions of this Agreement which by their nature are intended to survive the expiration or termination of this Agreement shall survive and remain in full force and effect including, but not limited to, Sections 3 through 25.

23. **Notices.** All notices and other communications hereunder shall be in writing and shall be delivered by personal delivery, mail, certified mail or overnight delivery. Notices to TBB shall be sent to the following address:

> The Business Backer, LLC
> 10999 Reed Hartman Highway, Suite 102
> Cincinnati, Ohio 45242

24. **Class Action Waivers.** TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES WAIVE ALL RIGHTS TO BRING CLAIM(S) AGAINST EACH OTHER RELATING TO THIS AGREEMENT AS A REPRESENTATIVE OR MEMBER OF A CLASS. IN THE EVENT A PARTY IS PERMITTED BY APPLICABLE LAW TO PROCEED AGAINST THE OTHER AS A REPRESENTATIVE OR MEMBER OF A CLASS, THE PARTY WHO PARTICIPATES AS A REPRESENTATIVE OR MEMBER OF A CLASS SHALL NOT: (i) BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS, AND (ii) SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY SETTLEMENT OR RECOVERY OBTAINED THROUGH THE CLASS ACTION.

25. **Counterparts.** This Agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same instrument. Facsimile signatures shall be deemed to be original signatures for purposes of enforcing this Agreement.

## PROCESSING ORDER

Merchant and Guarantor(s), on behalf of themselves and their Affiliates, irrevocably order and authorize each and every credit and debit card processor they use ("Processor") to deliver all payments of funds from Merchant's, Guarantor(s)'s and their Affiliates' customers' use of credit and debit cards ("Card Receivables"), less Processor's fees and charges, only to the Account identified below.

**THE BUSINESS BACKER**
One Call Can Fund Your Future™
toll free) 866.616.4747 • fax) 866.400.3352

It is agreed that:

1. Processor shall not be required to obtain any additional authorization or verification of this Processing Order.
2. This Processing Order may be terminated only by a writing signed by Merchant and TBB prior to termination. Processor is directed to inform TBB of any attempt by Merchant to terminate or modify the terms of this Processing Order or Merchant's relationship with Processor, or redirect the delivery of receivables from Merchant's customers.
3. Merchant has sold certain receivables to TBB, and on that basis understands that TBB may direct certain actions of Processor as provided in this Processing Order. Merchant acknowledges that other than the directives provided in this Processing Order, TBB is not responsible for the actions of Processor.
4. Processor is authorized to furnish TBB with any transaction, financial and historical data without any additional authorization, other than this Processing Order.
5. "Affiliates" means, with respect to any person, any other person which directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with such person.
6. Merchant, Guarantor(s) and their Affiliates agree to indemnify Processor from any and all losses, damages or claims, liabilities and expenses, including attorneys' fees, arising from Processor following the instructions set forth in this Processing Order.
7. This Processing Order shall terminate once TBB has received the certain receivables which it has purchased. Once termination has occurred, Processor shall be provided a written termination signed by Merchant and TBB.
8. MERCHANT ACKNOWLEDGES THAT PROCESSOR'S PAYMENTS TO THE ACCOUNT IDENTIFIED BELOW ARE IN ADDITION TO ANY FEES OWED BY MERCHANT TO PROCESSOR PURSUANT TO THE MERCHANT AGREEMENT OR ANY OTHER AGREEMENT BETWEEN MERCHANT AND PROCESSOR.
9. Merchant agrees that Merchant will not change Processor or Processor login information including user id and password as identified below. Should such a change occur outside the Merchant's ability to prevent the same, the Merchant will provide any and all such information required by TBB to fully access Merchant's processing account twenty-four (24) hours prior to any such change. Failure to provide TBB with the information needed to fully access Merchant's processing account twenty-four (24) hours prior to a change will be consider an Event of Default under the Merchant's Purchase of Receivables Agreement.

Routing #: 241070417        Account #: 4514961417        Bank: Charter One

### Processor Login Information

Website: #https://reporting.rbsworldpay.us/Pages/UserLogin.aspx#

User ID: my.ranch@hotmail.com        Password: Myranch1

Merchant ID: 542929803731058

Page 1 of 2              My Ranch, Inc. - DIP - dba Fresh Harvest Market              rev 03-26-09 ACH

| My Ranch, Inc. - DIP | The Business Backer, LLC |
|---|---|
| Merchant Name (Printed) | |
| By: *[signature: Rasheeda Oghafua]* | By: _____ |
| Signature | Signature |
| Rasheeda Oghafua | |
| Signor's Name (Printed) | Signor's Name (Printed) |
| President | |
| Title | Title |
| 2/23/2010 | |
| Date | Date |

### GUARANTOR(S)

| Rasheeda Oghafua | By: *[signature: Rasheeda Oghafua]* | 2/23/2010 |
|---|---|---|
| Guarantor's Name (printed) | Signature | Date |
| Cecelia Johnson | By: _____ | 2/23/2010 |
| Guarantor's Name (printed) | Signature | Date |
| _____ | By: _____ | _____ |
| Guarantor's Name (printed) | Signature | Date |